We'll start with 20-9591 Vasquez-Castillo v. Garland. Ms. Villalpando, are you ready to proceed? Yes, your honor. Thank you. Good morning. May it please the court. My name is Brenda Villalpando and I'm here representing Mr. Eric Vasquez-Castillo, the petitioner in this case. Mr. Vasquez-Castillo had been in the United States for 24 years, since he was three years old, before he was removed to Mexico in July of 2020. Mr. Vasquez-Castillo has a U.S. citizen wife, a U.S. citizen newborn daughter, lawful permanent resident parents, and a U.S. citizen sister, among many extended family members as well. Based on those relationships, he was eligible to apply for adjustment of status under the former 245-I and for a 212-H waiver for his criminal convictions. The immigration judge in this case denied that 212-H waiver and the Board of Immigration affirmed that denial. Now, your honors, this is a case about the misapplication of a legal standard in Mr. Vasquez-Castillo's case. One question, he is not in this country now, is that correct? That's correct, your honor. He was removed in July of 2020 when the BIA dismissed his appeal. Okay, thank you. You're welcome. And as I was stating, this case is about the misapplication of a legal standard and the denial of due process, two issues that this court has jurisdiction to review under 8 U.S.C. 1252-A2D. He's asking this court to reverse the Board's decision under three main reasons. First, it is our position that the Board incorrectly found that the heightened standards set forth in 8 CFR 1212.7D applies in his waiver application. And even assuming that the Board incorrectly applied that standard because it failed to consider whether the regulations permit other factors besides the hardship to be considered by the Board. And third, we are arguing that the Board made a mistake in concluding that petitioner was not denied procedural due process during his removal proceedings. In addressing my first point, we are, you know, it is our position that my client's conviction for robbery is not violent or dangerous and which the IJ and the Board of Immigration Appeals found. We believe this to be a legal error and it incorrectly apply the high standard to my client's waiver application. So let me ask you about that. So do you agree that if the IJ considered the facts underlying your client's conviction, not just the fact or not just the conviction itself, but if they the facts of the conviction and determined that those facts did amount to like dangerous and, you know, dangerous type behavior, that the decision would have been discretionary and non-reviewable? I do agree, Your Honor. I do agree with that. But in this case, the immigration judge and the Board gave, you know, heavy weight to the elements of the offense, to the, you know, to the elements of robbery. And in this case, even though the judge and my opposing counsel does cite to this is that the judge and the BIA both cited to the police report saying that, you know, that there was a threat to use a gun to be able to take a bike, but that's the analysis stopped there. There was no meaningful analysis of why this particular offense, these underlying facts amounted and rose to the level of being violent and dangerous. Did you put on evidence yourself, presenting evidence to the IJ that the crime was not as dangerous as it appeared from the nature of the conviction itself? We did, Your Honor. We submitted the police report, which included the facts and included the testimony of the victim. And that police report corroborated my client's testimony. And the judge found my client to be credible. There was no reason to find them not credible. And my client did testify that no one was hurt, that there was no gun, even though there was a threat and use of a gun, there was no gun during the incident. There was no physical contact. There's no, you know, this offense was committed with a co-offender. And it was a co-offender who made the threat that he had a gun and took the bike. My client was there. He admitted to that and he testified to that. All of that, there's not even evidence that my client spoke to the victim. I want to assume for purposes of our argument that you, that the IJ listened to everything your client said and believed him. Yes. Could the IJ then, based on that evidence, say, you know what, I've listened to everything you said, I believe you, but I still think what you did was an extremely dangerous act. And so I'm going to apply this heightened standard and find that you're not eligible to stay and have you removed. You know, the IJ, you know, could have made that finding, your honor, but I do believe that he should have explained it in his decision of how that underlying crime, how that underlying offense rose to that level. That wasn't done here. That wasn't done here. And so, and the BIA pretty much just agreed with the immigration judge's decision and cited to that decision. There was no meaningful analysis of why my client's crime rose to that level. Where we see another board president in matter of Jean, you know, we haven't a respondent that beat and shook a 19 month old baby to death. We have more recently matter of CASD, where we have a respondent who served nine years in prison for committing a home invasion robbery, bounding the victim, pushing him down the stairs and causing him severe injuries. Nine years in prison. Those were clearly dangerous offenses and both the immigration judges and the BIA did a meaningful analysis of how those offenses rose to the level of being violent and dangerous. And we don't have that here. Let me ask you on that point. Your analysis seems to be what actually happened. And the reason perhaps there was not actual violence is because the victim simply submitted and had the victim not submitted, maybe the victim would have been beaten up or maybe there really was a gun, who knows. So why are we looking at, why are you looking at it just in terms of what actually happened versus the crime itself and the risk of danger that that crime per se presents? Yes, your honor, because under board president, under board law, that's what we have to look at. It's a fact-based approach. It's not a categorical approach. It's not looking at the elements of the offense. In this case, the fact is that these two approach the person with the valuable bike and say, give us the bike or else, and the victim looks them over and gives them the bike. That's a fact. Presumably not because he wanted to lose the bike. That's correct, your honor. But also the fact is that there was no weapon present. Matter of, you know, matter of gene calls for that fact-based analysis for that particular reason. It looks as to what happened. And so in this case, in these cases where they have decided that offenses are violent and dangerous is because there's that, the facts support that finding. There was either injury, there was a weapon. Now, I'm not saying that all robbery offenses are not going to be, they're not going to rise to that level. I'm not arguing that. But I am arguing that in this particular case, it just did not rise to that level. Well, let me ask whether we need to address the issue you're raising. Because even if, well, let's put this one, the immigration judge had an alternative ground for denying the waiver of inadmissibility, saying that even if he was eligible because there were, say, he even found there were exceptional or extremely unusual hardships involved, that would lead to his eligibility even if he committed a serious crime. That there is still a step in which the immigration judge clearly stated that this is an alternative ground, that even if he is eligible, even if he had established the hardship necessary for the waiver, that the IJ would exercise his discretion or her discretion, I don't remember the gender of the immigration judge. The IJ would exercise discretion, say, no, I'm not going to grant the waiver in this case. And there are two problems there. One, you didn't challenge that alternative ground. And second, even if you did, given that it's a purely discretionary decision, I don't think we have any authority to review that. We're stuck with it. So respond to that. I think that's an argument made by the government in That's correct, Your Honor. And I respectfully disagree. The fact that the immigration judge imposed a heightened standard is at the core of the argument. In relevant parts, Section ATFR 1220.7 states that in general, IJ will not favorably exercise discretion. So that imposes a high standard of discretion as well, which I did challenge. And that's, you know, I'm not asking the court to reweigh the discretionary factors in this case. I'm not asking, you know, for the right to a different conclusion that, you know, just because we didn't, we didn't get the relief that we were seeking for. But I am asking the court to find that the high standard was determinative of the discretion because it was a high standard of discretion. 1220.7 states that depending on the gravity of the alien's underlying criminal offense, a showing of extraordinary circumstances might still be insufficient to warrant discretion. Those are not normal discretionary factors. It's very heightened discretionary standard that my client's application was applied. Did the immigration judge say that even if I don't apply the heightened standard, I would still not exercise discretion to grant relief? He did not, Your Honor. He in fact did not apply any discretionary factors set forth by board president. He cited to the USCIS practice manual, which, you know, I believe it was, it was an error, but he did not. He did not set, you know, an alternative finding for ordinary discretionary factors. He applied the heightened standard and went with that. So of course, applying the heightened standard of hardship, applying the heightened standard of discretion, it led to the denial of the waiver because he did, he did impose a higher standard. And if there's no additional questions, I would like to reserve the remainder of my time for rebuttal. You don't want to talk about the due process issue. If you're going to talk about it now, you're not going to be allowed to bring it up on rebuttal. You can submit it on the briefs if you want. You know, just to briefly mention due process, now that the court invites me to address it, you know, I do think in this case, there was a procedural due process violation. You know, at the court of procedural due process, a person has that right to know the opportunity to be heard. And this court has held that. This court has held that, you know, a person doesn't have, you know, a liberty interest in due process. But that's not the issue. Clearly has the right to be heard. Here, the judge said, I want your briefing by this date. And it wasn't provided. So the opportunity was provided, but just not exercised. He didn't take the opportunity. Right, your honor. And then the record shows that the instructions of the immigration judge were that the closing arguments were to be submitted at the next scheduled hearing. That was that those were the instructions that were set forth. That scheduled hearing was scheduled for December 24. But that, of course, that hearing was rescheduled due to being a holiday. But the instructions were, and that shows on the record on page 599, where the judge clearly states, I want your closing arguments the day of the next scheduled hearing, I will review them, I will take them into consideration. And then I will issue a decision that day. Those that was the expectation that we have. Okay. Thank you. Any questions? Okay. Mr Hardy. Uh, thank you, your honor. May it please the court. Joseph Hardy for the attorney general. Uh, of course, I've got my little spiel, but I think I'll go directly to, uh, only the two things that came up from, uh, the opening. Uh, your honor, if you look at the, uh, uh, as you mentioned, the, uh, board and the immigration judge alternatively found, uh, that even if, uh, you had established the extraordinary circumstances under the regulation under the statute, which, uh, specifically gives the immigration or the immigration judge and the board, uh, discretion to deny the application, even if the, uh, some of the threshold questions are met ultimately as a matter of discretion, petitioner's counsel concedes that she did not challenge that, uh, that goes by the statute. It doesn't just go by the regulation. Uh, you've seen that in cancellation of removal, you can ultimately meet all the threshold questions, even adjustment of status. These are some of those where you can meet all the threshold questions, but the agency still can deny it ultimately as a matter of discretion. And so, and they, uh, her argument, if I understood it correctly was it's still a matter of discretion, but if there's been the preliminary determination by the IJ or BIA or both that there was a violent or dangerous crime, then the IJ well, and the board are instructed that their discretion is to be rarely exercised. And that's a higher standard for the exercise. That's a yes, higher standard for the exercise of discretion based on a finding, which she is challenging the finding that it was a violent or dangerous crime. So if you look at the, uh, both the immigration judge's decision and the board's decision, they both cite to matter of, uh, silver Trevino. And, uh, if you look at matter of silver Trevino itself, it says a matter of silver Trevino was a case in which the agency or the immigration judge initially found that the alien's crime was violent or dangerous. And then the board reversed that, but the board reversed it and sent it back to the agency, specifically noting that the, uh, the, uh, our, that the agency should still consider whether he merits that as an, as a, as an exercise of discretion under the well-established framework for evaluating discretionary determinations. And if you look, as I say, both agencies cite to that decision, uh, here, and I'm talking about sure. Some of you are aware of silver Trevino, the decisions that were issued by the immigration, uh, I'm sorry, the attorney general, there's that last silver Trevino decision that was issued by the board. Um, once the other silver Trevino decisions, uh, ran their course, but then you'll see just like the, the board did in that decision, the immigration judge and the board in this case weighed the various factors in this case. And they're, they're, they're the same factors. If you look, uh, they both mentioned, um, his illegal entry into the United States, the fact that he had previously received, I'm sorry, uh, I think I've, I've lost you here because I want to focus on, is there a one standard of review for exercising discretion at this second stage? Yes, there is. It's all for whether the person is under that. Let me finish. So I'll be clear. Is the standard for the exercise of discretion at this final step, is that standard different depending on whether there's a finding that the petitioner committed a violent or dangerous crime? Does the standard for discretion differ in that circumstance? So, no, it does not. Your honor. If you look at, I'm sorry, this court has the brew versus Gonzalez decision, right? And brew versus Gonzalez. That was where the person was only found at the lower, uh, uh, the crime wasn't a violent or dangerous crime there. The agency ultimately just found that the petitioner, uh, didn't establish the, the extreme hardship. If you're in that circumstance where the regulation doesn't apply, has been found to not apply. And this circumstance where the regulation has been found to apply under matter of silver Trevena, you're weighing the equities the same. It doesn't matter that the person ultimately has a violent and dangerous crime. I think petitioner is reading too much into that last sentence of the regulation where it says, moreover, depending on the gravity of the aliens, underlying criminal offenses, a showing of extraordinary circumstance circumstances might still be insufficient to warrant a favorable exercise of discretion under two 12 H two. And so I specifically saying under two 12 H two, that's the, that's the statute that gives the to deny the waiver regardless of the person's, uh, of the circumstances of the person's criminal ground of inadmissibility. Are there any BIA decisions or court decisions that construe that language she's referring to? So we'd have some guidance on whether to adopt your view of how to interpret it or miss VL Pando's view of how to interpret it. Do you know? I don't think there are any that, that I don't think you're going to find. And I think that's my point. You're not going to find any that are going to look at this, that language any differently, whether it's in the brew or, or, or silver Trevena circumstance, or whether it's in the matter of CASD circumstance, because the, the, that doesn't create a higher burden, uh, for the alien to establish that he, that he would, uh, merit a favorable exercise of discretion under two 12 H two, uh, the alien is going to have to, uh, under the silver Trevena fact, or I should say that as silver Trevena mentioned the well-established framework for evaluating discretionary determinations, that's the weighing of the equity. And so the, the immigration judge here hasn't said that, Oh, well, in addition, we've, I mean, if you look at the immigration decision and the board, they don't say, and addition, we also find that the, as an adverse factor that the crime itself was particularly a violent or dangerous. It just points out the fact that he had multiple convictions after he, uh, was given administrative closure. So, I mean, that's something that they're going to weigh regardless of the circumstances, as in regardless of whether the crime has been found to be violent or dangerous for the crime, similar to the brew circumstance or silver Trevena has been found not to be the circumstance. So if you see the immigration, if that's the case, the immigrant, if, if it was the case where the immigration judge was going to apply a heightened standard for weighing the equities under that supposedly under that last sentence, the immigration judge wouldn't have cited to silver Trevena, which is a, which is a decision in which the board found that the regulation did not apply. Mm-hmm. You see what I'm saying there? Otherwise they would have cited to maybe a matter of CASD or something like that. CASD, I don't think they ever really, uh, actually they, they, they did get to, uh, the same factors. And if you look at CASD, uh, if I'm, uh, recall correctly, CASD also sites to silver Trevena when it does that alternative weighing at the end of the decision. So ultimately it's the same, regardless of the person has been found to, uh, uh, be subject to the rate. I think you've addressed that issue. So proceed. Okay. Thank you. And so ultimately petition, as you mentioned, petitioner hasn't addressed that alternative determination. And so that determination is independently dispositive of the entire weight. And so if you look at the, the, uh, uh, some of the arguments that she's making, uh, even as far as the application or I'm sorry, the, the, the agency's conclusion that the, uh, the statute is violent and dangerous. And so I'm saying violent and dangerous because the agency found that it was both not that, not that it was one or the other, but the, the, the, the application, that's why, if you look at the discourse decision in Galeano Romero last year, that was about the exceptional and extremely unusual hardship determination after, um, how do you say the kid Guerrero Lispria it's pointing out that when petitioners are trying to point to a particular case and to another agency decision, um, in this case, petitioner citing to matter of CASD, that's, that's exactly the type of the value-based, uh, determination that the court found in Galeano Romero, that it lacks jurisdiction to review petitioners essentially saying is, well, look at matter of CASD. That was much worse. My guy, he didn't have a gun. He didn't even say anything to the person. Uh, no one was injured. He didn't even talk. My guy, I believe personally that the person should not have been found to be violent or dangerous. That is the value-based judgment that ultimately is up to the attorney general to decide not to the court. So the court doesn't have jurisdiction over that equally discretionary determination. The fact that the board in this case cited to, uh, uh, uh, uh, these particular cases, I think at one point it does cite to matter of CASD and Silva, uh, Silva Trevino, uh, as I mentioned, but that's just to show, I'm sorry, matter of gene. That's just, I mean, that lets you know that, look, the board understood what it was supposed to be looking at. The immigration judge understood what it was supposed to be looking at. And so here the agency did not, to the extent that we have the, the, the legal argument on the table, um, as far as the, the, the categorical approach, the agency did not apply a categorical approach. I mean, if you look at the immigration judge's decision is specifically sites to the fifth circuits, uh, I think it's gene versus holder, which then quotes, uh, the matter of, uh, of gene, uh, for the proposition that he was required to look at the, the, the nature and circumstances of the crime. And so what petitioner is trying to do here is relitigate the crime and show that, well, look, even the state shouldn't have found me guilty. No, what, when the immigrant or when the immigration judge is citing to, or specifically pointing out this court's case law, um, to say that the crime is a crime of violence. It did exactly what the board did in the matter of CISD decision that petitioner sites throughout her brief. If you look at CISD, it was about a, uh, I think a New Jersey, uh, a second degree robbery conviction, CISD, the, the, the board specifically spell, uh, spelled out the text of the statute. And then it went on to look at the criminal records to find that the circumstances involved were violent and dangerous. Here, the agency looked at the, they'd look at the necessarily the elements to say that, well, you meet these elements. It's a crime of violence under 10th circuit law. That means that you are, are, uh, your crime is violent and dangerous. No, it looked at the nature of the crime itself. It wasn't going to relitigate the crime. It just looked at the nature of the New Mexico robbery, uh, uh, crime, which this court specifically has found involves the, the, the, the, the, the use of force or the threatened use of force. That's the nature of the crime. That's not a categorical, uh, uh, uh, comparing of the elements to, uh, um, a generic federal, uh, uh, definition. And then the circumstances is as petitioner can see the agency did in this case was look at the police report, which petitioner herself supply. The government didn't supply the police report petitioner did, and then said that the, uh, if you look, I mean, the circumstances support that as well, because the petitioner can seize that he and a friend went up to the person, took their BM, took the person's BMX bike under threat and use, uh, uh, uh, of a gun that's threatened force. I think we understand your argument on that point. Would you address procedural due process? And it's made is that the attorney for petitioner missed the deadline for submitting a brief and opposing council has said, no, the deadline wasn't a fixed date. It was the date whenever was to be of the next hearing. That was, uh, uh, what the immigration does. She's correct. The immigration judge says that, okay, we're going to have a hearing on December, on December 16th, the immigration judge told her, we're going to have a hearing on December 24th. You're going to have a, uh, a written statement that is due that day under the immigration courts practice manual. If there is no hearing, then it's been whatever pleading you had do is due by the close of business on that day. The immigration judge never changed the, the, the, the due date, uh, for that written statement. And petitioner has an extent. There might be any ambiguity there was a brief submitted at the rescheduled hearing. Uh, there was no reschedule. It was initially rescheduled, I believe to January 8th. And then the immigration judge, um, ended up, I think canceling that hearing. I don't know if he canceled it and set another date, but he eventually issued. And I think we're talking about a male judge. So I apologize to judge Palomino. If I'm saying he, it should be she, but he's, he eventually, uh, issued a decision on January 15th. So petitioner for one hasn't explained from a prejudice standpoint, one, why she didn't file the application by December 24th. She's saying to you that it was our by, uh, um, at a hearing at December 24th, but she didn't explain that before the agency that, well, look, I didn't file it on December 24th because of X, Y, Z reason. She doesn't explain, uh, why she didn't seek an extension of that time. She doesn't explain why within the next three weeks recall that it initially was due December 24th and the immigration judge decided on January 15th. Why at no point before then she didn't file it with the immigration judge. But even then, as the board mentioned, the board reviews, discretion and judgment didn't know. So to the extent that petitioner was going to make any art, there's some sort of rule of procedure that says if the hearing is, uh, is not in the briefing is the documents are due by the date of that hearing. Is that in the CFR or is that some manual that we don't have in the record? It's the, uh, it's not in the record, but it's immigration court practice manual chapter 3.1 beat. And I, I believe I do our, uh, site that and, uh, our answering brief judge hearts. Good counsel. Uh, give us that site in like a 28 J letter. Would that be appropriate? Sure. Sure. I can. I certainly can. I'll do that right afterwards. And then I can, again, it's on page 33 of the brief judge Carson. Okay. Actually, let me make sure my, uh, table making is, is, is, is correct. Yeah. Page 33 immigration court practice manual chapter 3.1 B. Yes. Just Carson. You still want a 28 J on that? No, that's fine. Okay. And so, and as the board and I, I, I see I'm over my time, but I see as the board mentioned, it reviews questions, uh, legal questions, questions of judgment and questions, uh, of, of, of discretion to know them petitioner had the opportunity. Your time's expired. And I do think we understand your, your argument. Okay. Thank you. Thank you. You had some time remaining as I recall. Your, your mic is muted still. Thank you. Thank you. Just to briefly address opposing councils, uh, statements regarding the practice manual and the deadlines. He does cite to a 3.1 B, which generally provides for specific deadlines for submissions before the immigration judge, unless otherwise specified by the immigration judge. And that, that, that part of the part of the practice manual is very important in this case, if it would have been a call update, which is usually done by these immigration judges, that's a specific deadline that's ruled by the day. And that day is at the end of business day, those documents have to be submitted that it's, it's, it's normal practice. However, in this case, the judge did not set that deadline. He did not say by this day, you have to submit your closing dates. If they would, if I've been practicing for 12 years, if he would have said that I would have understood that to be a case. In this case, he said, you're the closing arguments will be done at the next scheduled hearing. I will review them that morning and I will make a decision, which again, with my experience, with this immigration judge, that is common to do. So it's not real fast. But I mean, he told you a specific date that that hearing was going to occur on and that your brief was going to be due that date. You seem to have interpreted that to mean if he moved the hearing, that it would move the briefing date, but that's not that that's not what he said. It wasn't, we didn't address the possibility of the, of the hearing being rescheduled. We, all the parties knew that the hearing would take place on December 24th. And he did give the specific instructions that the briefs would be due that day. So that, that, that was my understanding. What about the alternative argument by Mr. Hardy that you haven't shown prejudice because the review by the BIA is de novo. So you could make all the arguments you wanted before the BIA and probably did make those arguments. I did make those arguments, your honor, but I do think prejudice was shown here. You know, these cases are close calls. They involve extensive legal issues, extensive legal facts. I have, it's been my experience where closing arguments, especially in the case where the judge hasn't made a decision regarding certain legal findings or findings of fact or evidence. It has been my experience that these closing arguments do make a difference. It can make the difference between getting a grant or getting a case denied. Obviously, if we're starting an appeal with a denied case, it's a harder, it's a harder case for us. You know, we do have to overcome the judges are given deference at the board level. And so if, if, if I would have been given the opportunity to submit those closings, we, my client would have had an opportunity to address all of the issues, which were the same reasons why the IJ ended up denying the case. So I do think that he was prejudiced and, and, and, and it did create, you know, it did set the tone for the case at the board level. There's no, there's no doubt. And if there's no further questions, your time's expired. Yes. Thank you, judge. Thank you. Counsel case will be submitted.